Morning, Your Honors. James Harris for Petitioner Allstate. I'd like to reserve four minutes for rebuttal. There are multiple independent reasons why this court should reverse the certification order here. And I'd like to start with the simplest of those reasons, which was the approval of the use of sampling testimony to attempt to prove class-wide liability without making any findings or having any record that would establish what that proposed sampling would demonstrate. Consistent with the commonality requirement of Walmart and this court's case management decisions, the Supreme Court of California last week in Duran unequivocally held that when a trial judge is asked to use approved sampling testimony for the purposes of proving liability, at the very least, a preliminary assessment is necessary to determine what the variability is, what the protocol, and what the likely results are. And under Walmart, and as a matter of logic, without that kind of information, you can't possibly know whether the proposed sampling constitutes collective proof of anything that's relevant. You can't possibly determine whether individual issues predominate over common issues. And you can't possibly know whether individual issues are going to be properly managed. The district court's order here fails on all of these accounts. It first held that sampling couldn't be used for the purposes of proving damages, that it was not reliable enough on this record. And that was correct. But that insight should have let the trial judge to conclude that it's even less appropriate with respect to liability in an area where it's historically never used. And it's an open question whether it ever may be permissibly used. But the district court made no such finding as to the reliability for purposes of liability. And on this record, it couldn't have. There's absolutely no way. Because the plaintiff's expert has neither determined what the study is going to be, nor conducted it. We have absolutely no idea on this record what the proposed sampling would show with respect to variability. For all we know, and what we would expect from our understanding of the record, it's much more likely that the proposed sampling would determine that individual issues predominate, because there's such huge variations in the experience of the 880 adjusters that are members of this class. And the deposition testimony of the plaintiff's expert is really critical here. He acknowledged that he hadn't conducted the study here. He hadn't made any opinion as to what might have caused any off-the-clock work. Or he hadn't made any determination as to whether there was commonality, or how much off-the-clock work might have been done. That puts him in the exact same position as the expert in Walmart, Bilby, who the Supreme Court squarely held, whose testimony was probative of nothing. So on this record, I think it was absolute error for the district court to conclude that sampling could be used to attempt to prove class-wide liability. And for this reason alone, the certification order has to at least be reversed and remanded. Well, it seems to me that LEVA, that's what I call it, L-E-Y-V-A, LEVA versus Medline Industries, seems to suggest to me, upon reading it, that we're not going to allow sampling representative testimony, trial by formula, whatever you want to call it, to be used for damages. But it also seems to suggest, us writing that issue, which I have to follow, that this sampling can be used for liability. Not on a record like this one, where you have absolutely no idea what the sampling is going to show. So it seems to me that if I move to where you're really going to go here, I have to suggest that the California case you suggested right up front moves it past where the district court did. Well, no. Because if I look at LEVA, I don't find anything in LEVA which gets us to what that California case said. Well, what LEVA said was that issues with respect to how much somebody worked or things like that were part of the damages inquiry. If you look at Duran, which is dispositive and binding on this court as to its understanding of the substance of California law, Duran says that cases like LEVA, didn't mention it by name, but other cases that are analyzed the same way, improperly conflate damages with liability for purposes of California law. For purposes of California law, the question of whether you worked off the clock, how many times you did it, how many hours, those are all liability questions because they all go to the fact of injury. Damages under California law is only the mathematical computation of what it would require to remedy the fact of injury. LEVA, with all due respect to Judge Pregerson, is based on the same misunderstanding of California law that the California Supreme Court corrected last week in Duran. Well, I'm going to ask counsel to talk to me about Duran because I think Duran has some application here. But my worry is, it seemed to me that as you made this argument, the use of the statistical sampling, and with the standard of review that I have to do on these kind of decisions in the district court, I didn't think, frankly, the district court was using statistics sampling in making its decision as it related to damage, that it was all about liability. And therefore, it seemed to me that, given the standard of review that I have, I'm having a tough time undoing it. Well, I don't think so because the district court's error here really was one of law. If you take the premise that perhaps it could be used for purposes of liability, you still, under this court's decisions about the necessity to articulate a manageable trial plan, you cannot articulate a manageable trial plan without an understanding of what the sampling evidence would show. I mean, what if the sampling evidence were to show here that only 20% of the people worked off the clock? We don't know because the sampling hasn't been done yet. Then you wouldn't have. But the trouble that I have with that is that it seems to me that there is some of this that I have to think further ahead as to where it's going to go. But I'm not really establishing the end result of this case at this point in time. I'm trying to decide if there is a class which statistics sampling can give me the end result in making a legal conclusion or a factual conclusion the jury can help with. And it isn't the end result I'm trying to find out now. I know it gets there. But I'm trying to put together a class of common basis that can get to where they have to go as to liability only. Yes, I understand. But with respect to sampling, all the judge found was that a survey can be conducted. I mean, that's a tautology. That's not a finding. Sampling is relevant only if it's admissible, only if it's evidence of commonality. Commonality, according to Walmart, is the ability to prove class-wide liability through collective proof. If you do not know the variability, you have no idea whether the proposed sampling can establish class-wide liability. So on this issue, the trial judge simply jumped the gun. And for this reason alone, the case has to go back. So you're not making any per se argument that statistical sampling can't be used for liability. You're just challenging the quality of the sampling in this case. Well, the nonexistence of it, yes. We're not asking you to go so far as to say, I mean, that's the ultimate question that eventually the Supreme Court will resolve. But you don't need to go that far in this case to reverse. With respect to the other issues, the trial judge also erred for similar reasons in holding that there was collective proof, legally sufficient collective proof, as to the elements of the claims. And also erred in concluding that the sampling and the so-called representative testimony, whatever it might be, could abridge all states' right to put on individualized offenses and denials. And Durant speaks directly to this. I think its understanding and application of federal due process law to California wage and hour cases is persuasive, if not entitled to comedy. What we know from Walmart is the trial by formula is rejected. Walmart applied that to these kinds of cases. And the specific error in Walmart, it's important. I mean, excuse me, in Durant, it's important to focus on. The court held that the trial judge improperly excluded and prevented the defendant there from putting on any individualized testimony outside the representative group, the non-statistically significant representative group. And that was error, particularly because the defendant had 89 declarations that would show that there was no liability. That's precisely what we have going on here with respect to our de minimis defense, with respect to knowledge, and I think also with respect to working off the clock. All state is not going to be able to put on individualized evidence. And it's not going to be able to ask to any of those issues. And it's going to be limited to challenging their representative testimony and their expert testimony. And that's an abridgment of all states' right to put on a defense and a denial with respect to every claim, with respect to every element of the claims. And it's really important. I mean, I'll give you a couple of examples. With respect to knowledge, this court's case enforcer says, as a matter of law, there can be no knowledge when no knowledge on the part of the employer when somebody hid his work. Two weeks ago, the California Court of Appeal in the Klein case, which we mentioned in our 28-J letter, said that federal FLSA decisions are applicable to California wage and hour claims, and specifically cited and relied on this portion of Forrester. We know on this record, I mean, all seven of plaintiffs' declarants hid their work. We have to have the right to put on those witnesses, to put on other witnesses, to demonstrate that this affirmative defense based on individualized evidence. If we can't, what we have is an ambush, not a trial. And under Durand, under Walmart and Durand, we have a dupe. You could put that evidence in under damages. Pardon me? You could challenge that under damages. But no, that's not damages, though. That's an affirmative defense to liability. And I urge you to take a look at Durand, again, where the Supreme Court of California distinguishes between the elements of liability and the elements of damages. For purposes of California law, damages is the computation, the mathematical computation necessary to correct the wrong. Whether somebody hid their work is an affirmative defense. It's no liability. Somebody worked off the clock, they hid it. Maybe they proved their prima facie case. But if they hid it, we have an affirmative defense to liability. And under Walmart and Durand, we have a due process right and a right under the Rules Enabling Act to put on individualized evidence of that defense. The same is true with respect to our de minimis defense, which it was acknowledged in the Mount Clemens case by the Supreme Court, has been applied in numerous cases, Ninth Circuit cases since then, like the Lindau case. If the amount of time that someone spends is trivial, that's not compensable. There's no liability there. If somebody spends, take on this record, an all-state adjuster is on the phone when the bell rings, metaphorically, and spends 20 seconds finishing the phone call. In theory, you could argue there was a prima facie case established there because the person worked 20 seconds off the clock. But under Mount Clemens, Lindau, and California law, there is no liability. We have an affirmative defense there. And we know from the declarations here that that affirmative defense is presented on this record. The trial judge's relegation of our ability to develop that point only by cross-examining the representative witnesses is a gross violation of our due process rights. So that's another reason. Yes? Were you going to keep some time for rebuttal? Yes, I'm going to keep, yes. You've got a minute and a half. Unless there are additional questions right now, I'll reserve the rest of my time for rebuttal. Thank you. May I proceed? You bet. Good morning, Your Honors, and may it please the court, Alexander Wheeler for the appellee. Your Honors, the district court in this case weighed and considered reams of evidence and ended up crafting a certification order that denied in part and granted in part a class certification motion. And that order may only be disturbed upon a very clear showing of abusive discretion. Those are the standards from this court in Armstrong versus Davis, the 2001 case that we cited in our papers. What the district court did here is it exercised its broad discretion and it found that there are common policies that are amenable to class-wide proof at the liability phase. The district court looked at lots of evidence about all states' common practices and found that based upon those common practices and based upon the legal standard applied to the off-the-clock claims, a class action is a superior and predominant method to resolve these claims. That's the order that's before all of you. And there is no showing that there is any abusive discretion in what the judge ordered. And there are three reasons for that. Well, address the two arguments that counsel just made. Because it seems to me those are arguments you've definitely got to take up when you're just going generally, as you have now done, into this order. Oh, go ahead, Your Honor. Thank you. The first argument is about the statistical sampling. And I don't think- I'm not even worried about the statistical sampling yet. What about his defenses, the affirmative defenses that have been waived, that are affirmative defenses to the claim itself? Absolutely, Your Honor. The district court order specifically noted that all state has defenses. And there is nothing in the order abridging or foreclosing any of those defenses at trial. The district court was very- He suggests that what the court order says is that the best he can do is cross-examine experts. Your Honor, I think that's absolutely false. And if you look at the district court's order, the district judge recognizes that there are defenses and says that all state may present them at trial. So when he gets up at trial and says, I want to present this kind of defense, you're, based on what you just told me, you're not going to object. Well, I reserve the right to object. Well, why? Because if you're going to sell it to me by saying he can present what he's just suggested and that therefore you can save this general order, then I don't want you going back to the district court when he tries to present this stuff and say, well, I object to that because your order won't allow it. Your Honor, the reason I answer that way is as a trial lawyer, I'm always very careful to not waive any objection. Well, I understand. But I'm trying to put you on the spot. Because frankly, his arguments he just made to me about the affirmative defenses that he might present to attack the whole of what you have. I mean, I've read pretty carefully about what the elements are, what the district court said, the common questions are. But he has to have a right, as I understand it under Dukes, to fight those and to fight them with whatever proof he has. Not damages, but proof about liability. And if these are liability defenses, which I frankly couldn't find a way around that they would be, I worry. If he can't present that kind of evidence, why? Why are we going to go forth with this? Understood, Your Honor. Barring a grant of summary judgment on the affirmative defenses, because I may move for summary judgment on the defenses, if we get to trial and they are live affirmative defenses, the district court has already ordered that they may present them. It's in the section of the district court's opinion called Defendant's Affirmative Defenses. And what the district court said was, defendant will have an opportunity to raise these defenses with the representative witnesses. So of course I would not object. There may be ways that the evidence is introduced that I would object to. But by virtue of raising them, I would not object to that. So I think that answers your court's question on that topic. But there is nothing. Then you go ahead. Yes, Your Honor. There was a lot of talk about Duran. It's a brand new case. Duran is a very specific case in the sense that what the trial court did was literally had his clerk pick out from a hat a sample of 20 class members. And the defense objected throughout both stages of trial, stood up and said, I want to put on more evidence than just the 20. And the trial judge every time said, no, you are stuck with these 20. Even in the face of evidence that was not a statistically robust sample. First of all, that was a trial. That was a case that reviewed a trial, not a certification order. But in Duran, there was no finding that liability sampling is improper. There was a finding that the draconian order barring evidence only on 20 people was improper. And on page 50 of the opinion, there is a key statement in the Duran holding. Assuming that sampling may be an appropriate means of proving liability or damages in a wage and hour class action, the sample relied upon must be representative. And the results obtained must be sufficiently reliable to satisfy concerns of fundamental fairness. There is absolutely no holding that you cannot use statistical sampling. Just that the defendant has to be able to impeach it. Well, but his argument is, based on this record, there was nothing to suggest that the sampling is going to come out one way or another. And your honor, I agree with that. I will agree. That it's just a mere sample that has been suggested. There's nothing to suggest it's going to come out one way or another. The district court should have done more. And while I responded, well, having been in this situation before, you don't want to get to the end before you get there. So you don't want to get to that problem. But if there's nothing more than just a sampling exercise and no reasonable idea about where it's going, how does that meet what we're looking at here? First of all, there is no case law suggesting that the sample must be completed by the time you get to certification. And what we did, and Duran speaks to this point, I think in the appellee's favor in this case. What Duran says is, if you're going to have a trial plan and show the court how the case is going to be tried using statistical evidence, you'd better have expert input. And that is precisely what we have in this case. We have an expert declaration from a renowned statistician and survey expert. And he lists specifically the type and nature of questions he will ask of the class. But if we were to come to certification, and if this court were to hold that that is what's required when a plaintiff comes to the court on motion for class certification, there would be no difference between liability and damage discovery. You'd have to come to your class certification hearing ready to try the case the next day. And that'd be a merits inquiry. And under Dukes, you're allowed to look at the merits. The district judge can look at the merits, but in a very limited way. The district court can take a peek at the merits and say, given that that's the legal standard the plaintiffs have to prove, does the Rule 23 elements interweave with the legal standards such that you can use common proof? What evidence do I have in this record this district court even peeked? Actually, I think there's a lot of evidence that the district court not only peeked. Absolutely. The district court made factual findings about policies to violate the official policies and went through and found that since the 2005 reclassification, these are findings of fact, Your Honor, more or less, that show the district court weighed the evidence before it that after the reclassification, the employees were working the same amount of time. There was no lessened workload. But all of a sudden, you had to get the same job done within eight hours in a day and 40 hours in a week, whereas before the 2005 reclassification, it was a job that required extensive overtime. So you have a very work-intensive job that requires a lot of hours to be worked. All you do is switch them over into hourly and name only, and now say you've got to work within this very small window of time. And the court also made a finding of fact that the fact that the class members were not allowed to record their own time, they had no control over it, their bosses did it for them, created a culture and effectively a policy that discouraged reporting of time but encouraged the working of it. And that's replete throughout his opinion. He said, this is a practice that is amenable to class-wide proof because the ultimate legal standard is new or should have known. And the district court really honed in on that should have known standard. And he said, since constructive knowledge fits the bill here, that is a standard that we can use a common policy and apply class-wide. So I think the district court was very thoughtful in applying the evidence, not just peaking, but really weighing and making quasi-factual findings and saying, given what I found, given what the facts are in this case, we can put this before the fact finder at trial and have a judgment that applies to everybody vis-a-vis the policies. And he was careful to say, I'm not yet convinced on damages. I'm sure the district judge knew that Duran was up before the Supreme Court, probably wanted to see what some other courts were going to say about it. He saved it for another day. So I think the court certainly looked at the merits. He made thoughtful findings. And that is where he came out on that issue. With respect to the other arguments, there was no misapplication of Duke's. I think Duke's changed the landscape somewhat in commonality, but very slightly. A plaintiff cannot just list common questions and say, district judge, certify me. Here's all these common questions. You've got to show common questions that, when they're resolved, advance the litigation. And that's exactly the application of Duke's the district court did here. He said, here's evidence of a policy. If I answer this policy one way, that will be applied to the entire class. That's the same issue that the California Court of Appeal reached late last year in Williams versus Superior Court. It's an analog case. I urge the panel to read it if you haven't yet. But Williams is the same defendant. It's an offshoot of this case. And the court found there are common issues based upon the nature of the off-the-clock claims and found that the question can be answered. And the Williams court analyzed Duke's, took a look at our case, and said this policy can be answered up or down, either way, and we can apply that answer to the entire class. Whether or not we do damages at that point cannot be a basis for a denial of class certification. That's the Leyva case that Your Honor mentioned. And because of that, the judge was thoughtful to say, let's take a look at damages later. Let's figure out what the deal is on liability. I've talked about the certification order did not foreclose any of the defenses. There's some suggestion that this is a trial by formula. That dicta in Dukes is very different from this case because there are no statutory defenses, that all state has a right to adjudicate and litigate with every single claim. That was the case with the Title VII claims before the Supreme Court in Dukes. It's not the case here. Additionally, in Duran, on page 35 of the opinion, the California Supreme Court notes, no case to our knowledge holds that a defendant has a due process right to litigate an affirmative defense as to each individual class member. So that right does not exist. They can introduce affirmative defenses. There was no motion in limine order barring evidence. In fact, the district court's order was quite open about how defenses can be tried later down the road in the liability phase of trial. And then there is some suggestions, just very briefly, Your Honor, that the district court misapplied the legal standard by referencing in a few places in his opinion that there was a could have known legal standard. I think it's very, very clear in the court's He recites the correct legal standard, right? Multiple times. And then he notes a number of reasons why the petitioner or plaintiff has met the burden. That's my understanding as well, Your Honor. There is no question that the district judge in this case understood the governing legal principle. He understood how to apply it. He applied the voluminous evidence before him to that legal standard and ended up making the call that these were issues that can be adjudicated liability on a class-wide basis. That can only be overturned on a very strong showing of clear abuse of discretion. That has not been done. I urge the panel to affirm the decision. With that, I'd be repeating mainly the arguments I made in my papers unless the judges have further questions. Judge Gould? I have no questions. Thank you. Thank you, Your Honor. Thank you. Again, I think we got you near the end, if not the end, but we'll give you some time. Has he got 1.23 left? OK, he's got time. Good. I know we gave him the business, so I didn't know how far we took him. A couple of points very quickly. As to affirmative defenses, it's quite clear that we're limited to cross-examining the representative witnesses, and that's the precise error that caused the Supreme Court in Duran to reverse last week. As to Duke's being limited to statutory defenses, well, that's absurd. It's been applied in cases all around the country. It's been applied by this court in the Wayne case. It was applied in Duran. It was applied by the Supreme Court in Comcast. It's a case for all seasons. With respect to their theory of pressure, I'd urge you to actually go one step farther than I got to in my opening argument. Their theory of pressure, that adjusters responded to pressure by working off the clock and hiding their work, I think that's a theory that, by definition, is immune to collective proof. The cases confirm my position. The Keiko case from this court and innumerable district court cases that we've cited uniformly hold that because of the variations in how individual adjusters respond to perceived pressure, proving the existence of the practices or the policies doesn't prove that any particular adjuster or whether many adjusters worked off the clock. And in Duran last week, the Supreme Court said, in no way does establishing liability for one person establish liability for another. So I think their entire theory is dead at the get-go under Keiko and the other cases we've cited. With respect to Williams, and then I will stop, the Williams case, which they rely on so heavily, the analysis in Williams is thoroughly undermined and its precedential value eviscerated by the Duran decision from last week. Williams, as I said, conflated damages and liability. It approved certification based on a misunderstanding of that point. It put all the liability questions into damages incorrectly. Duran corrects that error. And since, as I explained in my opening remarks, the individualized questions here go to the elements of liability, whether people worked off the clock and whether all state knew about it, and to affirmative defenses to liability, as a matter of law, the certification order cannot stand.  I think we have your argument. I think we have your argument, counsel. I appreciate both of you making them. This is a tough area of the law. It's something that every time we have one of these up here, we have to get reacquainted. Maybe you know it better than we do. We're acquainted with where we are, but we do. And we've had these cases a lot, and we appreciate your helping us make some decisions here. Thank you. It seems like you have immigration cases three or four times a day. Thank you very much. Thank you. All right, case 12, 56112, Jimenez versus all state insurance is submitted. And court is in recess for today. All rise, the court is in recess.
judges: Korman, GOULD, SMITH